

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Charles H. Theobald
County Attorney
Galveston County
Galveston, Texas

*This opinion Overrules Opinion dated 6/8/38 to Theobald Co. Atty., Galveston*

Dear Sir:

Opinion No. O-3684

Re: Where, in order to cure
defect in title to por-
tion of lot acquired for
sea wall right-of-way,
title to the entire lot
was purchased by the
county with sea wall
funds, may commissioners'
court convey surplus por-
tion of such lot under
Article 1577 (R.C.S.,
1925)?

This will acknowledge receipt of your letter of recent date wherein you request the opinion of this Department upon the problem summarized above.

The facts regarding this transaction as submitted by you are substantially as follows:

"Galveston County is at present the record title holder of Lot 3 in Northwest Block of Out-Lot No. 95 in the city and county of Galveston, Texas. The south part of this lot, being that part now located within the Galveston County sea wall right-of-way, was purchased by Galveston County from August Anderson and wife, by deed dated April 6, 1903.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Charles H. Theobald, Page 2

"This deed recites that Galveston County was purchasing, for sea wall right-of-way purposes, a strip of land across Lot 3, particularly described by metes and bounds in accordance with the map of the sea wall right-of-way adopted by the Commissioners' Court of Galveston County, Texas, August 23, 1902, and recorded in Book 194, pages 1-4, Deed Records of Galveston County, Texas. The consideration was paid out of the sea wall fund.

"The balance of said lot, being the north portion thereof, was allowed to remain, under the terms of said deed, in August Anderson and wife.

"It subsequently developed, however, that on the 14th day of February, 1900, the city of Galveston had secured a judgment against August Anderson and wife for taxes due on said Lot 3. On the 29th day of August, 1903, some five months after the purchase of the south portion of said lot for sea wall right-of-way purposes, Henry Thomas, Sheriff of Galveston County, conveyed to Charles T. Suderman, under execution of said tax judgment said Lot 3, for a consideration of $100.00.

"Thereafter, and apparently for the purpose of curing the flaw in the title to that part of the Lot purchased by it for right-of-way purposes, Galveston County, on the 17th day of December, 1903, by deed recorded in Book 200, page 136, purchased all of said Lot 3 from Charles T. Suderman, for a consideration of $125.00 and the assumption of taxes. This consideration was also paid out of funds set aside for sea wall purposes.

"In this last deed from Suderman to Galveston County, there appears no statement whatsoever as to the purposes for which the lot was

Honorable Charles H. Theobald, Page 3

being acquired and no reference to the map of the sea wall right-of-way or any other language of whatsoever nature tending to connect the lot with the sea wall.

"In due course the Galveston County sea wall was constructed upon the right-of-way as shown by the map, and ever since its completion, the north part of said Lot 3 has remained vacant and unused by anybody for any purpose. The lot now stands in the name of Galveston County."

The counties of this State derive their authority to sell county-owned real estate from the provisions of Article 1577, R.C.S., 1925. This statute governs the sale of all county real estate except lands belonging to the free school fund of the county. See Logan v. Stephens County (Civ. App. 1904) 81 S.W. 109 (affirmed, 83 S.W. 365, 98 Tex. 283).

Article 1577 reads as follows:

"Sale of real estate. -- The commissioners court may, by an order to be entered on its minutes, appoint a commissioner to sell and dispose of any real estate of the county at public auction. The deed of such commissioner, made in conformity to such order for and in behalf of the county, duly acknowledged and proven and recorded shall be sufficient to convey to the purchasers all the right, title and interest and estate which the county may have in and to the premises to be conveyed. Nothing contained in this article shall authorize any commissioners court to dispose of any lands given, donated or granted to such county for the purpose of education in any other manner than shall be directed by law."

You will note that this article includes within its scope "any real estate of the county" except lands acquired by the county for the purpose of education.

Honorable Charles H. Theobald, Page 4

Does this broad language of the statute embrace lands held in trust by the county for a particular purpose? This question arises because of the fact that the consideration for the purchase of Lot 3 was paid out of the sea wall fund. This fund constitutes a special fund held in trust by the county for the exclusive purpose of constructing, maintaining and purchasing right-of-way for sea wall and breakwaters. See Article 6838, Vernon's Annotated Statutes. In the management and handling of this fund, the commissioners' court acts in the capacity of a trustee.

Article 6838 reads as follows:

"Custodians of funds

"All funds, revenues and moneys derived from the sale of the bonds herein authorized and from the sale or rent of reclaimed or other lands acquired under this title and from additional uses of said works as herein authorized, shall be deposited with the county or city treasurer, as the case may be, and shall be held in trust exclusively for the construction and maintenance of seawalls and breakwaters, including the purchase of the right of way therefor. All moneys derived from the assessment and levy of taxes as aforesaid are declared to be a trust fund for the payment of interest and principal of bonds to be issued under this title."

It might be urged that under the provisions of this statute, the property acquired with sea wall funds became trust property, and, therefore, such property is not included in the provisions of Article 1577.

However, in view of the fact that our courts have stated that the commissioners' courts occupy in respect to all county property a trust relation, this contention becomes tenuous. See Llano County v. Knowles (Civ. App.) 29 S.W. 549; Llano County v. Johnson (Civ. App.) 29 S.W. 56.

Another question in regard to the authority of the commissioners' court to sell the unneeded portion of Lot 3 is raised by Article 6839a, which reads as follows:

"Grant of sea wall right of way
"Any county may donate and grant to the
State of Texas or to any eleemosynary insti-
tution incorporated under the laws of the
State of Texas and operated without profit,
but for the benefit of the public, such por-
tions of any seawall right of way as may have
been heretofore acquired by such county, and
by the Commissioners' Court of such county
deemed proper to be so granted, and upon any
such Commissioners' Court so determining,
the county judge of such county may convey
such property in accordance with the order
of said Commissioners' Court."

This statute enacted as Ch. 144, Acts 1929, 41st
Leg. p. 308, is the only provision appearing in Title 118
which deals with sea walls, and the question presents itself
as to whether it was the legislative intent that this be the
only method of disposing of unneeded sea wall right of way
property.

Counties being component parts of the state, have
no powers or duties except those which are clearly set forth
and defined in the constitution and statutes. Edwards County
v. Jennings (Civ. App., 1895) 33 S.W. 585; 11 Tex. Jur. 563.
Commissioners' courts have only such powers as are expressly
or impliedly conferred upon them by law. Commissioners'
Court v. Wallace, 118 Tex. 279, 15 S.W. 535; Seward v. Falls
County (Civ. App., Austin, 1922) 246 S.W. 728.

You will note, however, that Art. 6839a is per-
missive in its terms. It confides in the commissioners'
court an additional power in regard to the disposition of
sea wall right of way; that is the power to donate it to the
State or certain types of eleemosynary institutions. The
power to sell land, which counties have under the provisions
of Article 1577, does not include or imply the authority to
give it away. Rogers v. Tompkins, (Civ. App. 1905) 87 S.W.
379, error refused; Llano County v. Knowles (Civ. App., 1895)
29 S.W. 549.

Honorable Charles H. Theobald, Page 6

The emergency clause which appears in the original enactment as Chapter 144, Acts 1929, unmistakably reveals the legislative intent to grant the additional power to donate such land. We quote the following therefrom:

"The fact that there exists property heretofore acquired by counties for sea wall purposes and not now needed for such purposes but required by the State of Texas and by eleemosynary corporations created by the laws of the State of Texas for the benefit of the public, without profit, and in furtherance of charitable work, and the use of said properties for such purposes is questioned, an emergency exists." etc.

Another legislative provision which is pertinent to the question raised by you, is Chapter 42, Acts of the 29th Legislature, Regular Session.

Section 1 of this act reads as follows:

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS: That no corporation, person or association of persons, shall be granted or exercise any rights, privileges or franchises for the construction or operation of any railway, whether by steam, electric, cable, horse or other power, nor shall any corporation, person or association of persons be granted any right, leasehold, privilege or franchise for any purpose, or purposes other than a public walk, public driveway or public park, along or upon or across any part of that tract of land situate in the city and county of Galveston, in this State, which was acquired by said county or commissioners' court thereof for seawall purposes under the authority of an Act passed at the first called session of the twenty-seventh Legislature of the State of Texas and approved by the Governor September 7th, 1901, entitled 'An act to give effect to Section VII, Article XI, of the Constitution, authorizing all counties and cities bordering on the coast of the Gulf of Mexico to construct seawalls and

Honorable Charles H. Theobald, Page 7

breakwaters, to issue bonds therefor, and
levy a tax for the payment thereof; and to
further provide for the construction and
maintenance of said works, and payment of
said bonds by sale or rent of lands re-
claimed from the sea, or otherwise ac-
quired for breakwater purposes,' and it
shall also be unlawful to allow the pos-
session, use or occupancy in any manner
whatever of any part of said tract of
land for any purpose whatever other than
a public walk, public driveway or public
park, and any action upon the part of the
county commissioners' court of Galveston
County, or any other court or body, or
official or officials, in attempted contra-
vention of this Act shall be void and of
no effect."

Under the facts submitted by you, the north por-
tion of Lot 5 was not acquired for sea wall purposes. By
its own terms this act is restricted to lands acquired for
sea wall purposes, and would not, therefore, apply to any
land not acquired for such purposes, unless we are pre-
pared to declare that all land acquired with Seawall Funds
must necessarily assume that status.

Article 90 of the Penal Code provides that moneys
realized from the sale of land acquired for sea wall pur-
poses shall be deposited in the sea wall fund, thus infer-
entially lending support to our construction of Chapter 42,
Acts 1929 and of Article 6839a. This provision of the
Penal Code reads:

"Art. 90. DIVERSION OF SEAWALL MONEY.
All funds, revenues and moneys derived from
the sale of the bonds authorized by law to
pay the indebtedness incurred in establish-
ing, locating, erecting, constructing, ex-
tending, strengthening, maintaining or keep-
ing in repair or otherwise improving any
seawall or breakwater, and to improve, main-
tain and beautify any boulevary erected in

connection therewith, <u>and all funds, revenues
and moneys derived from the sale or rent of
reclaimed or other lands acquired by law and
from additional uses of</u> such works as auth-
orized by law, shall be deposited with the
county or city treasurer, as the case may
be, and <u>shall be held in trust exclusively
for the construction and maintenance of sea-
walls and breakwaters</u> including the purchase
of the right-of-way therefor; and all moneys
derived from the assessment and levy of taxes
as aforesaid are declared to be a trust fund
for the payment of interest and principal of
such bonds, and the use or diversion of such
moneys for any other purpose whatever is here-
by prohibited and a violation of this Article
shall constitute a misapplication of public
money, and the person so offending shall be
punished as provided in Article 86."
(Emphasis supplied.)

It is therefore the opinion of this Department
and, you are so advised, that the commissioners' court of
Galveston County has authority to dispose of the excess
portion of Lot 3, being the north portion thereof, by sale
under the provisions of Article 1577 (R.C.S. 1925).

A contrary view of this question was taken in an
opinion written by R. E. Gray, Assistant Attorney General,
dated June 8, 1938. Mr. Gray held that the Article 6829a,
supra, sets out the only method of disposition of excess
sea wall right of way and that, therefore, the commission-
ers' court may not sell such land by complying with Article
1577. Mr. Gray's opinion, insofar as it is in conflict
with this opinion, is hereby expressly over-ruled.

Trusting that we have fully answered your inquiry,
we are

APPROVED JUL 28, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Peter Maniscalco

Peter Maniscalco
Assistant

PM:ff

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN